UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LYNETTE LITTEN,

               Plaintiff,

     v.

GM COMPONENTS HOLDINGS, LLC,

               Defendant.

**DECISION AND ORDER**

19-CV-926S

## I.  INTRODUCTION

In this action, Plaintiff Lynette Litten seeks damages from her employer, GM Components Holdings, LLC, ("GM") for violating her rights under Title VII and the Age Discrimination in Employment Act when co-workers harassed her and when she was subjected to a disciplinary suspension for harassing a co-worker. Before this Court is Defendant's motion for summary judgment (Docket No. 34), which this Court will grant, for the following reasons.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the motion for summary judgment. This Court takes the facts in the light most favorable to Litten, the non-moving party. See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

Litten, a member of the Mohawk Nation, is over 66 years old. (Docket No. 40-3 at pp. 2-4; Docket No. 34-3 at p. 40.) She began working at Delphi Corporation in Lockport, New York, around 2000, and continued to work at the same facility when GM acquired it.

1

(Docket No. 34-2, ¶¶ 5-6.)

Cathy Palmer was a fellow employee of Litten's at GM. Palmer is a 58-year-old African-American woman. (Id., ¶¶ 13, 58.) Sometime in 2016, Palmer called Litten a "dirty Indian." (Id., ¶¶ 16.)  In September 2017, Litten was involved in an argument with Palmer over seating in the breakroom. (Id., ¶ 11.) Around that time, Palmer "threw parts" at Litten while they were working on the same machine. (Id., ¶ 14.) The parts did not hit Litten. (Id., ¶ 15.)  At some point in 2017, Palmer called Litten an "old, stupid thief." (Id., ¶ 17). In October 2017, Litten complained to GM that Palmer was spraying cleaner on things that Litten touched, arguing about the smell of the break room, and accusing Litten of stealing silverware from the break room. (Id., 24.) Around the same time, Litten also experienced interpersonal issues with Bonnie Lajoie, a Caucasian co-worker, and Joella Smidl, an African-American co-worker. (Id., ¶ 21.)

Litten met with GM's human resources manager Dennis Gilbert about her problems with Palmer, Lajoie, and Smidl. (Id., ¶ 24-25.) When asked at her deposition, "did you find that Gilbert was courteous in his dealings with you?" Litten answered, "he was ok." (Docket No. 34-3 at p. 35.)[1]

On October 26, 2017, GM interviewed Litten, Palmer, Smidl, and Lajoie regarding Litten's complaint. (Id., ¶¶ 30-31.) On November 7, 2017, Gilbert held a meeting discussing the interpersonal issues between the employees and reiterating GM's anti-harassment policy. (Id., ¶ 32.) Gilbert, Palmer, Lajoie, and Smidl all attended this meeting.

---

[1] In her brief opposing GM's motion for summary judgment, Litten argues that she was subjected to degrading and humiliating treatment by Mr. Gilbert and that he "berated her" for complaining about her experiences. (Docket No. 40 at p. 14.) However, Litten admits GM's assertion–in its statement of material facts—that "Litten testified that Gilbert was always courteous in his dealings with Litten." (See Docket No. 40-1, ¶ 26.)

2

(Id., ¶ 33.) Litten received no discipline following her October complaint. (Id., ¶ 34.) Palmer, Lajoie, and Smidl all received one-day disciplinary layoffs in connection with GM's investigation of Litten's October complaint. (Id., ¶¶ 35-37.)

On January 25, 2018, Litten's co-worker Meril (or Marie) Irby submitted a complaint about Litten to GM. (Id., ¶ 38). Irby is a 60-year-old African-American woman. (Docket No. 34-2, ¶¶ 44, 59.) In a "Statement of Harassment," Irby complained that Litten had been harassing her for the past two years by laughing hysterically whenever Irby walked by. (Docket No. 34-9 at p. 2.) Litten denied harassing Irby and had considered Irby to be a friend prior to Irby's complaint. (Docket No. 40-1, ¶¶ 41, 43.) On or around February 9, 2018, GM determined that Litten was guilty of violating its rule against threatening, intimidating, coercing or interfering with employees and issued Litten a five-day disciplinary layoff without pay. (Id., ¶¶ 45, 47.) Litten filed two grievances regarding this discipline and continued to assert that she never harassed Irby.  (Id., ¶¶ 50, 54.) Both grievances were denied. (Id., ¶¶ 53-54.)


## III.  DISCUSSION

Litten claims that GM violated her rights under Title VII and the ADEA to be free from race-based discrimination and retaliation and from age-based discrimination. She seeks lost wages and compensatory and punitive damages from GM.

GM moves for summary judgment on Litten's claim.

## A.    Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading...."); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the non-moving party. See Anderson, 477

4

U.S. at 252.

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

Summary judgment is appropriate even in discrimination cases, for, as this Court noted, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

**B.     Litten's Race Discrimination claim under Title VII**

**1.  Title VII Claims**

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-93, 123 S. Ct. 2148, 2150, 156 L. Ed. 2d 84 (2003).  This provision prohibits intentional discrimination (disparate treatment), severe and pervasive discrimination that permeates the workplace (hostile work environment), and retaliation for opposing discriminatory practices (retaliation).  See Hagan v. City of New York, 39 F. Supp. 3d 481, 494 (S.D.N.Y. 2014).

When, such as here, there is no direct evidence of discrimination, the McDonnell Douglas burden-shifting analysis applies.  See Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 142-43, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).  Under this framework, the plaintiff must first establish a prima facie case of race discrimination by showing that (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of that adverse employment action give rise to an inference of discrimination.  See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Weinstock, 224 F.3d at 42.

If the plaintiff meets this initial burden, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."  Weinstock, 224 F.3d at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993)).

If the defendant makes this showing at the second stage, the burden returns to the plaintiff to prove that the defendant's explanation is pretext for unlawful discrimination. Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (per curiam). The plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42. The plaintiff "must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination."  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004); see Terry, 336 F.3d at 138.  "In short, the question becomes whether the evidence, taken as a whole,

6

supports a sufficient rational inference of discrimination." Id. But "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." Weinstock, 224 F.3d at 42 (quoting St. Mary's, 509 U.S. at 519).

### a. Disparate Treatment

A disparate treatment claim arises when a member of a protected class is treated less favorably than others under circumstances from which an unlawful motive could be inferred.  See Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of Olean, 667 F.2d 305, 309 (2d Cir. 1981); see also Ott v. Perk Dev. Corp., 846 F. Supp. 266, 275 (W.D.N.Y. 1994). Such a claim "requires proof that the defendant acted with a discriminatory intent or motive."  See Hagan, 39 F. Supp. 3d at 495 (citing Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 986, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)).

A plaintiff claiming disparate treatment in the absence of direct evidence must produce sufficient evidence from which a reasonable trier of fact could conclude that plaintiff (1) is a member of a protected class, (2) performed her job satisfactorily, (3) suffered an adverse employment action, and (4) suffered the adverse employment action under circumstances that give rise to an inference of unlawful discrimination.  See Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

The Second Circuit defines an adverse employment action as a "materially adverse change" in the terms and conditions of an individual's employment. Sanders v. N.Y.C. Hum. Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

> To be materially adverse, a change in working conditions must be
> more disruptive than a mere inconvenience or an alteration of job

7

> responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Galabya, 202 F.3d at 640 (quotations, citations, and alterations omitted); see also Sanders, 361 F.3d at 755.

Because each action presents unique circumstances and there is no bright-line rule, "courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997).  Notably, "'not everything that makes an employee unhappy is an actionable adverse action.'"  Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) (citing Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).

Discrimination can be inferred from "the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge," Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009), or "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." Littlejohn v. City of New York, 795 F.3d 297, 312-13 (2d Cir. 2015) (collecting cases).  For disparate-treatment claims, the plaintiff must show that she "was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). That is, she must show "similarities in education, seniority, performance, and specific work duties" and similar requirements for skill, effort and responsibility for jobs performed under similar working conditions."  Potash v. Fla. Union Free Sch. Dist., 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013) (internal quotation marks and citations omitted); see also Chan v. NYU

Downtown Hosp., No. 03-CV-3003, 2006 WL 345853, at *4 (S.D.N.Y. Feb. 14, 2006) (viewing "similarly situated" in terms of "responsibilities, tenure, experience, background, qualifications, education, etc.").

### b. Litten's disparate-treatment claim cannot survive summary judgment.

GM concedes for the sake of this motion that Litten meets the first three criteria of a prima facie case of disparate treatment, that is, that she belongs to a protected class, was qualified for her position, and experienced an adverse action in her 5-day unpaid disciplinary layoff. GM disputes, however, that there are any circumstances giving rise to an inference of discrimination.

Litten argues that non-Native American co-workers were treated better than she was—a disparate treatment claim. To support this claim, she argues in her briefing that co-workers (including Palmer, Lajoie, and Smidl) were not disciplined for their bullying of her. (Docket No. 40 at p. 13 ("Ms. Litten reported it but nothing was done."))  In her statement of material facts, however, Litten admits that GM did conduct an investigation of her complaints and did discipline Palmer, Lajoie, and Smidl. (See Docket No. 40-1, ¶¶ 30-37.)  Her argument that GM failed to punish those who harassed her is therefore not supported by the evidence. Litten does, however, sufficiently raise an inference of discriminatory intent in the fact that she was disciplined more severely than her non-Native American co-workers. She was punished with a 5-day disciplinary layoff for her harassment of Irby, while Palmer, Lajoie and Smidl, all non-Native Americans, who received one-day suspensions.

Taking the facts in the light most favorable to Litten, Litten's claim that she was punished with a 5-day suspension for an offense she did not commit, while her non-Native

American co-workers received only one-day suspensions for harassment that they did commit, suffices to raise an inference of discriminatory intent and establishes Litten's prima facie case. (Docket Nos. 34-7 (Palmer); (34-7 Smidl); 34-5 (Lajoie).)

Turning to the next step, this Court finds that GM has met its burden of providing a legitimate, non-discriminatory reason for disciplining her. GM provides Irby's statement alleging that Litten had laughed uncontrollably at her whenever she walked by for the past two years. (Docket No. 34-9.) GM states, and Litten admits, that upon receipt of Irby's complaint, GM interviewed Litten and found her guilty of violating Shop Rule 33, which bans threatening, intimidating, coercing, or interfering with employees. (Docket No. 40-1, ¶ 45.) This suffices for a legitimate non-discriminatory reason.

The presumption of discriminatory intent now vanishes, and Litten must present admissible evidence showing that it is more likely than not that GM's reason is a pretext. She has not done so. Even if a jury were to believe Litten's claim that Irby was lying in her letter, Litten does not provide any evidence at all from which a jury could conclude that GM acted with discriminatory intent in disciplining her.  At this stage, Litten must do more than cast a "metaphysical doubt" as to the material facts; she must "offer some hard evidence showing that [her] version of the events is not wholly fanciful."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586.  No reasonable jury could find that Litten's discipline was due to animus based on her status as a Native American, and not on GM's belief—even if mistaken—that Litten had violated its anti-harassment policy.

**C.    Litten's Title VII Hostile Work Environment Claim**

Litten argues that she was subjected to a hostile work environment when Palmer threw metal at her and called her a "dirty Indian" in 2016 and called her an "old, stupid

thief" and sprayed items she had touched in 2017, when human resources manager Gilbert became angry with Litten when she complained about Palmer, and when GM engaged in "unsubstantiated fault finding" against her and held her accountable for actions she never committed. (Docket No. 40 at p. 16.)

The Supreme Court has held that Title VII's protections extend beyond "economic" or "tangible" discrimination. Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (citing Meritor Sav. Bank, FSV v. Vinson, 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). That is, Congress enacted Title VII to "strike at the entire spectrum of disparate treatment of men and women in employment," including the requirement that employees work in a hostile or abusive environment. Harris, 510 U.S. at 21.

To survive a motion for summary judgment, a plaintiff asserting a hostile work environment claim must produce sufficient evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson, 180 F.3d at 436).

As to the first prong, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." Rivera v. Rochester Genesee Reg'l Trans. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (quotations and citations omitted). Both objective

and subjective elements must be satisfied: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014); see also Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001). But notably, a plaintiff need show only that the discriminatory work environment was severe *or* pervasive, not both.  See Pucino v. Verizon Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010); Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 161 (E.D.N.Y. 2011) ("Severity and pervasiveness are independent standards, only one of which the plaintiff must meet.")  And of course, the plaintiff must demonstrate that he or she was subjected to the hostile work environment because of his or her race (or another protected characteristic). See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

Whether workplace discrimination is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.  "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)); Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (stating that simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice).  In the end, the severity requirement is "demanding to ensure that Title VII

12

does not become a general civility code." <u>Faragher</u>, 524 U.S. at 788.

As to the second prong—imputation of the hostile work environment to the employer—liability depends on whether the harassment is perpetrated by a supervisor or co-worker.  <u>See Wiercinski v. Mangia 57, Inc.</u>, 787 F.3d 106, 113 (2d Cir. 2015).  If the harasser is in a supervisory position over the plaintiff, the employer is strictly liable, unless it establishes that (1) it reasonably acted to prevent and correct the harassing behavior, and (2) the plaintiff unreasonably failed to partake in any preventive or corrective opportunities provided by the employer or otherwise failed to avoid the harm.  <u>See Faragher</u>, 524 U.S. at 807; <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

If the harasser is a non-supervisory coworker, an employer is liable only if it either "failed to provide a reasonable avenue for complaint" or "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  <u>Duch v. Jakubek</u>, 588 F.3d 757, 762 (2d Cir. 2009).

GM maintains that it is entitled to summary judgment on Litten's hostile-work-environment claim because the conduct she describes does not rise to the level of a hostile work environment and because, even if Litten's colleagues' behavior amounted to harassment, GM took prompt remedial measures. Litten argues that GM's tolerance for other employees' abuse and its unsubstantiated fault-finding against her sufficiently supports her hostile-work-environment claim.

Viewing the record and drawing all inferences in Litten's favor, this Court finds insufficient evidence from which a reasonable jury could find that she was subjected to severe and pervasive conditions that altered her work environment.

13

Litten's argument that Gilbert's treatment of her was part of a hostile work environment fails because she does not contest GM's assertion that "Litten testified that Gilbert was always courteous in his dealings with [her]" and she provides no other admissible evidence regarding his conduct. (Id., ¶ 26.)

The conduct by Palmer of which Litten complains—one incident of being called a "dirty Indian" in 2016, one incident of being called an "old stupid thief" in 2017, Palmer's spraying items Litten had touched, and one incident of having metal thrown toward her, but not hitting her—does not meet the applicable high standard. The comments amount to "the sporadic use of abusive language," Faragher, 524 U.S. at 788, and the "old, stupid thief" comment and the metal-throwing are both facially race-neutral. Only Palmer's spraying of items Litten had touched, after calling her a "dirty Indian," could possibly rise to the level of "severe" conduct. But Litten does not offer any evidence of the frequency of this conduct or that it physically threatened or humiliated her. Nor does she claim that it unreasonably interfered with her work performance.  Harris, 510 U.S. at 23. This Court finds that Palmer's spraying of items Litten had touched, while highly offensive in light of her having called Litten a "dirty Indian," does not rise to the level of severity required for this prong.

Even if this conduct did rise to the level of "severe," because Palmer's comments and actions represent actions by a co-worker, Litten's claim can survive only if GM "failed to provide a reasonable avenue for complaint" or "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  Duch, 588 F.3d at 762. Here, GM asserts, and Litten admits, that "GM investigated [her] complaint," conducted an interview with the alleged perpetrators, held

14

a meeting regarding interpersonal issues among the employees, and disciplined Palmer, Lajoie, and Smidl in connection with GM's investigation. (Docket No. 40-1, ¶¶ 30-37.)

Finally, even if Litten's 5-day suspension by GM in 2018 did amount to "unsubstantiated fault finding," Litten brings forth no evidence from which a reasonable jury could conclude that this discipline was related to her status as a Native American. It therefore does not qualify as a discriminatory incident such as is envisioned by the hostile work environment theory.

Because a reasonable jury could not find that Litten's workplace was permeated with severe or pervasive discriminatory incidents, nor that a specific basis exists for imputing that environment to GM, GM is entitled to summary judgment on Litten's hostile work environment claim.

**D.    Litten's Title VII Retaliation claim**

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (a). To survive a motion for summary judgment, a plaintiff claiming retaliation must present sufficient evidence from which a jury could conclude that "(1) defendants discriminated—or took an adverse employment action— against h[er], (2) 'because' [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90. To establish a prima facie claim, a plaintiff must set forth sufficient evidence that (1) she engaged in protected activity; (2) her employer was aware that she engaged in protected activity; (3) she suffered an adverse employment action; and (4)

15

there was a causal connection between the protected activity and the adverse employment action.  See Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), aff'd, 689 F. App'x 670 (2d Cir. 2017).

The concept of "adverse employment action" is broader for Title VII retaliation claims than for Title VII discrimination claims and encompasses any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S Ct. 2405, 165 L. Ed. 2d 345 (2006); Rivera, 743 F.3d at 25.

Causation can be established either directly through evidence of retaliatory animus or indirectly by demonstrating that the adverse employment action followed quickly on the heels of the protected activity or through other evidence such as disparate treatment of fellow employees. Dickens, 167 F. Supp. 3d 522–23 (S.D.N.Y. 2016) (citing Kercado–Clymer v. City of Amsterdam, 370 F. App'x. 238, 242–43 (2d Cir. 2010). "Title VII retaliation claims must be proved according to traditional principles of but-for causation.... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013); accord Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 n. 5 (2d Cir. 2013)). However, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." Zann Kwan, 737 F.3d at 845.

Once a plaintiff makes out a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its

action. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552–53 (2d Cir. 2010). If the defendant meets this burden, to avoid summary judgment the plaintiff must point to evidence sufficient to present an inference that the proffered reason is a mere pretext for retaliation. Id. "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage," but "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence" such as inconsistencies, implausibilities, and contradictions in the employer's explanation, to defeat summary judgment at this stage. Zann Kwan, 737 F.3d at 846, 847 (citing El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) and Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001)).

Turning to Litten's claims, this Court finds that Litten engaged in protected activity when she complained in October 2017 about her harassment by Palmer, specifically Palmer's spraying cleaner on things Litten touched after having called Litten a "dirty Indian" in the past. She has also demonstrated that GM was aware of this protected activity because Gilbert's knowledge of her complaint establishes GM's "general corporate knowledge" of it. Id. at 844 (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996) (holding that a plaintiff's complaint to an officer of the company communicated her concerns to the company as a whole for purposes of the knowledge prong of the prima facie case)).

Litten appears to argue that the adverse action she suffered was her discipline in January on what she argues was a fabricated charge. Because the burden of establishing a prima facie case is *de minimis*, this Court will accept that this constitutes an adverse action.

17

This Court also finds that Litten's October 2017 complaint is sufficiently close in time to her February 2018 discipline to raise an inference of discriminatory intent, given the de minimis burden at the prima facie stage. Courts in this circuit have found that three to four months is a sufficiently short period of time to establish an inference of discriminatory intent. See, e.g., Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (four months); Hubbard v. Total Commc'ns, Inc., 347 F. App'x. 679, 681 (2d Cir. 2009) (summary order) (four months); Blackwell v. City of Bridgeport, 238 F. Supp. 3d 296, 312 (D. Conn. 2017) (three months). This Court finds that Litten's October 2017 complaint and her February 2018 discipline are sufficiently close in time to establish an inference of causation.

For its part, GM has provided a legitimate, nondiscriminatory reason for its January 2018 discipline of Irby. It has submitted Irby's signed complaint stating that Litten was harassing her and argues that this allegation of harassment was the legitimate and nondiscriminatory reason that it imposed Litten's 5-day suspension. GM has met its burden.

To survive summary judgment, Litten now must bring forth evidence from which a jury could find that a retaliatory motive was a but-for reason for her discipline. She has not done so. "[W]ithout more ... temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." El Sayed, 627 F.3d at 933. Litten offers nothing but the evidence of temporal proximity. Litten points to no inconsistencies or implausibilities that would cast suspicion on GM's stated reason for her 5-day suspension. Even if, as Litten argues, Irby was lying in her complaint, Litten has not provided any evidence to suggest that GM acted with knowledge of Irby's lies, rather than

in a good-faith belief of Irby's allegations. See Mitchell v. SUNY Upstate Med. Univ., 243 F. Supp. 3d 255, 281 (N.D.N.Y. 2017), aff'd sub nom. Mitchell v. State Univ. of N.Y. Upstate Med. Univ., 723 F. App'x 62 (2d Cir. 2018) ("because the evidence establishes that Plaintiff did miss work, and Defendant believed the absences to be unauthorized prior to receipt of the umpire's decision, the Court finds that a reasonable jury would not conclude that the August 2, 2013, NOD would not have been issued in the absence of a retaliatory motive.)

Given the lack of evidence, a reasonable jury could not conclude that Litten's 5-day disciplinary suspension discipline in January, following a hearing based on Irby's complaint, would not have happened but for GM's retaliatory motive. GM is therefore entitled to summary judgment on this claim.

### E.     Litten's ADEA age-discrimination claim

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). This protection covers "individuals who are at least 40 years of age." Id. § 631 (a).

ADEA claims are evaluated under the McDonnell-Douglas burden-shifting framework. Zenie v. Coll. of Mount Saint Vincent, No. 20-3535-CV, 2021 WL 6105373, at *1 (2d Cir. Dec. 21, 2021). First, Litten must establish a prima facie case of discrimination, demonstrating that (1) she was "within the protected age group," (2) she was "qualified for the position," (3) she "experienced adverse employment action," and (4) the action "occurred under circumstances giving rise to an inference of discrimination." Langella v.

<u>Mahopac Cent. Sch. Dist.</u>, No. 18-CV-10023 (NSR), 2022 WL 44776, at *6 (S.D.N.Y. Jan. 5, 2022) (citing <u>Green v. Town of E. Haven</u>, 952 F.3d 394, 403 (2d Cir. 2020)).

If Litten establishes a prima facie case, GM has the burden of proving a legitimate, non-discriminatory reason for its actions. <u>Id.</u> (citing <u>Gorzynski</u>, 596 F.3d at 106). If it does, then Litten must show that age was the "but for" cause of the challenged adverse employment action. <u>Id.</u>

GM concedes for the sake of argument that Litten has met the first three requirements. It argues, however, that she has not demonstrated that the adverse action—her 5-day disciplinary suspension—occurred under circumstances giving rise to an inference of age-based discrimination.  This Court agrees.

In assessing Litten's race-discrimination claim, this Court found that the fact that non-Native American comparators were punished less severely than she was raised an inference of discriminatory intent and sufficed to make a prima facie case. But here, Litten does not point to any younger comparators who received more favorable treatment. Palmer, who was punished less severely, is 58 years old. (Declaration of Jodi West, Docket No. 34-4, ¶ 9.) And Irby, whose complaint led to Litten's 5-day suspension, is 60 years old. (Id., ¶ 10.) Unlike her race-discrimination claim, where she made a prima facie case by showing that non-Native Americans were disciplined less harshly than she was, here, Litten has not shown that younger comparators were treated less harshly than she. There is thus no basis on which a reasonable jury could infer that age was a factor in Litten's discipline in February 2018.

Even assuming, arguendo, that Litten could make a prima facie case of age discrimination, she has not brought forth evidence that GM's reason for its action was a

pretext. GM states that Litten's 5-day suspension was based on Irby's complaint and its zero-tolerance policy regarding harassment. To defeat this, Litten must point to evidence from which a reasonable jury could find it more likely than not that but for Litten's age, this discipline would not have happened. Litten points to nothing in the record to support such a finding. The only mention of age is Palmer's comment, sometime in 2017, that Litten was old and stupid, and Litten provides no reason to attribute this comment to GM. (See Docket No. 40-1, ¶ 17.) Litten points to no conduct by GM that would lead a reasonable jury to find that GM's asserted reason is a pretext for age-based discrimination against her.

## III. CONCLUSION

Because Litten has not identified any facts from which a reasonable jury could find that GM discriminated or retaliated against her based on her race, or discriminated against her based on her age, GM's Motion for Summary Judgment is granted.

## IV.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 34) is GRANTED.

The Clerk of Court is hereby DIRECTED to close this case.

SO ORDERED.

Dated:        March 9, 2022
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge